**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

NOV 28 2017

Clerk, U.S Courts
District Of Montana
Missoula Division

| | |
|---|---|
| VANESSA GAUDETTE,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>Defendant. | CV 16–137–M–DLC–JCL<br><br><br>FINDINGS &<br>RECOMMENDATION |

Plaintiff Vanessa Gaudette brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.

## I.  **Procedural History**

Gaudette applied for benefits in January 2008, alleging an amended onset date of September 1, 2008.  Gaudette's application was denied initially and on reconsideration, and by an ALJ following an administrative hearing.  After the Appeals Council denied her request for review, Gaudette filed an action in this Court seeking judicial review.  The Court reversed and remanded the matter to the

-1-

agency for further proceedings. In July 2014, the Appeals Council remanded

Gaudette's claim for a new hearing consistent with the Court's remand order.

In the meantime, Gaudette filed a second application for Title II disability

benefits in November 2011. Gaudette's second application was denied initially

and on reconsideration, and by an ALJ in a decision dated May 1, 2014. When the

Appeals Council remanded Gaudette's first application, it vacated the ALJ's

unfavorable decision on her second application and consolidated it with her first

application.

A second administrative hearing was held in June 2015, after which the ALJ

issued a new decision denying Gaudette's disability claim. (Doc. 7-9, at 8-26).

The Appeals Council denied Gaudette's subsequent request for review, thereby

making the ALJ's decision the agency's final decision for purposes of judicial

review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Gaudette was 39 years old at the time of her alleged onset date, and 47 years

old at the time of the ALJ's most recent decision.

## II. Standard of Review

This Court's review is limited. The Court may set aside the Commissioner's

decision only where the decision is not supported by substantial evidence or where

the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1

(9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d

1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings

"if supported by inferences reasonably drawn from the record." *Batson v.

Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir.

2004). "[I]f evidence exists to support more than one rational interpretation," the

Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193

(*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court

"may not substitute its judgment for that of the Commissioner." *Widmark*, 454

F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## III.   **Burden of Proof**

To establish disability, a claimant bears "the burden of proving an 'inability

to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which...has lasted or can be expected

to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at

-3-

1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii). If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant

-4-

can perform other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).

## IV.   **Discussion**

Following the steps in the sequential evaluation process, the ALJ first found

that Gaudette met the insured status requirement of the Act through September 30,

2012, and had not engaged in substantial gainful activity since her September 1,

2008, amended  onset date.  At step two, the ALJ found that Gaudette had the

following severe impairments: hypothyroidism, multiple chemical sensitivity,

bipolar disorder, anxiety disorder, personality disorder, undifferentiated

somatoform disorder, cognitive disorder, major depressive disorder, sinusitis, and

allergic asthma.  At step three, the ALJ determined that Gaudette did not have an

impairment or combination of impairments that met or medically equaled any

impairment described in the Listing of Impairments.  The ALJ found that

Gaudette's subjective symptom testimony was only partially credible and she was

capable of performing a limited range of medium work.  Based on that residual

functional capacity assessment, the ALJ concluded Gaudette could not perform

any past relevant work but could perform other jobs that existed in significant

numbers in the national economy.

Gaudette argues the ALJ erred by: (1) finding she did not meet or equal the

criteria of a listed impairment; (2) discounting her subjective symptom testimony;

-5-

(3) discounting lay witness testimony provided by her mother; and (4) rejecting

certain medical and other source opinions.[1]

## A.   Listed Impairments

Gaudette first argues the ALJ erred at step three by finding that she did not

satisfy the criteria for presumptive disability under Listing 12.02 for organic

mental disorders or Listing 12.04 for affective disorders.  At the third step in the

sequential evaluation process, the ALJ must consider whether the claimant's

impairment, or combination of impairments, meets or equals an impairment listed

in 20 C.F.R. P. 404, Subpt. P, App. 1.  "If the claimant meets or equals one of the

listed impairments, a conclusive presumption of disability applies." *Marcia v.*

*Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990).  To meet the requirements of a listing,

---

[1] In her response brief, the Commissioner moves to strike the Statement of
Uncontested  Facts on the ground that the filing is not authorized under Local Rule
78.2 governing social security cases.  Gaudette maintains that social security cases
in the Ninth Circuit have historically been resolved by way of summary judgment,
and points out that Local Rule 78.2 does not expressly prohibit parties from filing a
statement of undisputed facts.  Local Rule 78.2 makes clear that unless the defendant
files a motion to dismiss, the clerk will issue a briefing schedule setting forth due
dates for the plaintiff's opening brief, the defendant's response, and the plaintiff's
optional reply.  The rule does not authorize summary judgment motions,  statements
of undisputed facts, or the submission of supporting evidentiary material.  Pursuant
to Local Rule 78.2, social security cases are resolved by the Court based on the
administrative record, the plaintiff's opening brief, defendant's response, and
plaintiff's optional reply.  In keeping with this procedure, Gaudette's Statement of
Undisputed Facts is properly stricken from the record.

the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d).

To demonstrate medical equivalence, the claimant must have impairments, considered alone or in combination, that are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). The Ninth Circuit has made clear that the "ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F f.3d 505, 512 (9th Cir. 2001). Nevertheless, the burden remains with the claimant, who must present medical evidence that her impairments meet or medically equal all of the criteria of a listed impairment. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

To meet Listing 12.02 or Listing 12.04, a claimant must satisfy the requirements of paragraphs A and B or paragraph C. The paragraph B criteria of both listings are the same, and require that a claimant's mental impairment result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; (4) repeated episodes of decompensation, each of extended duration.

Alternatively, a claimant may satisfy the C criteria of Listing 12.02 or

-7-

Listing 12.04 by demonstrating a medically documented history of an organic

mental disorder or affective disorder of at least two years in duration that has

caused more than a minimal limitation in the claimant's ability to do basic work

activities, along with one of the following (1) repeated episodes of

decompensation, each of extended duration; (2) a residual disease process that has

resulted in such marginal adjustment that even a minimal increase in mental

demands or change in the environment would be predicted to cause the individual

to decompensate; or (3) a current history of at least one year of inability to

function outside a highly supportive living arrangement.   20 C.F.R. Part 404,

Subpart P, Appendix 1 §§ 12.02 & 12.04.

   The ALJ addressed Listing 12.02 and 12.04 on remand.  With respect to the

paragraph B criteria, the ALJ found that Gaudette had no restrictions in activities

of daily living, moderate to marked difficulties in maintaining social functioning,

mild difficulties maintaining concentration, persistence, or pace, and no episodes

of decompensation of extended duration.  (Doc. 7-9, at 12).  Because Gaudette's

mental impairments had not resulted in at least two marked limitations, or one

marked limitation and repeated episodes of decompensation, the ALJ concluded

that the paragraph B criteria were not satisfied.

   The ALJ also found that the paragraph C criteria of Listings 12.02 and

12.04 were not satisfied because the record did not reflect any episodes of decompensation of extended duration or a residual disease process that had resulted in such marginal adjustment that even a minimal change in the environment would be predicted to cause Gaudette to decompensate, or a current history of one or more years inability to function outside of a highly supportive living arrangement.  (Doc. 7-9, at 12).

The ALJ based his step three assessment in large part on the expert testimony of clinical psychologist Dr. Margaret Moore.  Dr. Moore testified that Gaudette did not satisfy the B criteria because her mental impairments resulted in no limitations in activities of daily living; moderate to marked limitations in social functioning; mild limitations in concentration, persistence, or pace; and no episodes of decompensation.  (Doc. 7-9, at 87-89).  Dr. Moore testified that Gaudette did not meet the C criteria either.  She stated there was no evidence of any episodes of decompensation after the alleged onset date and no persuasive evidence that Gaudette needed a highly structured living arrangement.  Dr. Moore further testified that Gaudette did not have a residual disease process resulting in such marginal adjustment that even a minimal change in the environment would be expected to cause her to decompensate.  The ALJ accepted Dr. Moore's opinion on both the B and C criteria.

-9-

Gaudette challenges the ALJ's step three analysis on two grounds. First, she argues the ALJ violated the law of the case by considering the C criteria of Listing 12.04. When this case was previously before the Court, Gaudette argued the evidence established that she satisfied the criteria of Listing 12.04. The psychologist who testified as an expert at Gaudette's first administrative hearing stated that she had a residual disease process that had resulted in such marginal adjustment that a change in the environment would be expected to cause her to decompensate. (Doc. 7-2, at 100). In its remand order, the Court noted that the ALJ had adopted the medical expert's opinion, but remanded for further proceedings because it was not clear based on the medical expert's testimony whether Gaudette also satisfied the prerequisite clause of the C criteria, which requires a medically documented history of a mental impairment of at least two years in duration that has caused more than a minimal limitation in the claimant's ability to do basic work activities. Gaudette argues the only issue to be decided on remand was whether she satisfied that prerequisite clause, and the ALJ violated the law of the case by reevaluating all of the C criteria.

The law of the case doctrine applies in the social security context, and prohibits a court "from considering an issue that has already been decided by that

-10-

same court or a higher court in the same case." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). The doctrine "should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Stacy*, 825 F.3d at 567.

The doctrine does not apply here because the evidence on remand was substantially different from the evidence presented at the first administrative hearing. After the Court's remand order, the Appeals Council consolidated Gaudette's first application with her second application. The record on remand contained additional medical evidence relating to Gaudette's second application, and the ALJ permissibly elicited new testimony from a medical expert for purposes of determining, among other things, whether Gaudette satisfied the C criteria of Listing 12.04. Because the record on remand contained new medical evidence and the medical expert testified based on her review of the record as whole, the law of the case doctrine does not apply.

Second, Gaudette argues the ALJ's step three analysis was flawed because he should have given more weight to a neuropsychological consultation report prepared by Dr. Nancy Didriksen in October 2010. At one point, Dr. Didriksen noted that Gaudette reported having no social life other than interacting with

-11-

friends and family by email. (Doc. 7-8, at 353). Dr. Didrikesen also wrote that neuropsychological testing showed "mild impairment of brain-related abilities, overall" and that difficulty with higher cortical functioning "would most significantly interfere with Ms. Gaudette's ability to perform the duties of her former or similar occupation, even under relatively environmentally safe conditions." (Doc. 7-8, at 377). Gaudette argues Dr. Didriksen's report thus shows she had marked limitations in social functioning, and marked difficulties in maintaining concentration, persistence, or pace.

Consistent with the Court's remand order, the ALJ considered Dr. Didriksen's opinion when assessing severity of Gaudette's mental impairments and associated limitations. With respect to social functioning, the ALJ agreed that Gaudette had moderate to marked limitations, which is consistent with Dr. Moore's testimony and Dr. Didriksen's opinion. But with respect to maintaining concentration, persistence, or pace, the ALJ found that Dr. Didriksen's test results did not support Gaudette's allegations of marked limitations. Intelligence and achievement testing administered by Dr. Didriksen showed a full scale IQ of 110 and performance score of 92, average to high average memory, and math, spelling, and reading abilities above the 12th grade level. The ALJ reasonably found that

these results strongly suggested that Guadette retained sufficient memory and

concentration to perform at least simple and routine tasks. Unlike Dr. Didriksen,

who did not specifically address the B criteria, Dr. Moore testified based on her

review of the record – including Dr. Didriksen's report – that Gaudette had mild

limitations in maintaining concentration, persistence, or pace. The ALJ

reasonably relied on Dr. Moore's expert opinion in finding that Gaudette's mental

impairments did not satisfy the B or C criteria of Listings 12.02 or 12.04.

Likewise, the ALJ permissibly discounted Dr. Didriksen's opinion that Gaudette

was disabled by her chemical sensitivities and cognitive limitations on the ground

that it was not consistent with her test results ,which showed only mild to

moderate impairment.

The Court thus concludes that the ALJ's step-three analysis is supported by

substantial evidence.

**B.    Subjective Symptom Testimony**

Gaudette argues the ALJ did not provide sufficiently clear and convincing

reasons for discrediting her subjective symptom testimony

If the ALJ finds "the claimant has presented objective medical evidence of

an underlying impairment which could reasonably be expected to produce the pain

or other symptoms alleged," and "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citations omitted). Gaudette met her initial burden because she provided evidence that she has underlying impairments that could reasonably be expected to produce her alleged symptoms, and the ALJ did not find that she was malingering. As set forth below, however, the ALJ then provided clear and convincing reasons for finding Gaudette's subjective testimony only partially credible.

The ALJ reasonably questioned Gaudette's testimony in part because it was not entirely consistent with her activities, which suggested she was capable of doing more than she alleged. For example, the ALJ pointed out that while Gaudette claimed her chemical sensitivities were so severe that she could not even enter the offices of specialists like allergists, who purified and controlled the quality of the air, she had driven thousands of miles and spent many nights in her car without being bothered by any odors, gases, or other vapors from the engine of her vehicle. The ALJ further found that although Gaudette alleged her chemical sensitivities were so severe she could not interact with others due to perfumes and

-14-

other odors, her interactions with others appeared unimpeded at times, particularly when discussing something of interest to her. This suggested to the ALJ that Gaudette's perception of her symptoms could be altered by her interest and emotional state, which undermined her allegations as to the severity of her chemical sensitivity. And to the extent Gaudette alleged difficulty concentrating, the ALJ found it significant that her activities included reading and enjoying hobbies like photography.

The ALJ also found that Gaudette made some inconsistent statements, which undermined her subjective symptom testimony. For example, the ALJ noted that while Gaudette claimed she had difficulty concentrating, she reported engaging in online coursework. And while Gaudette alleged great difficulty with social interactions, the ALJ pointed out that she also reported befriending others with chemical sensitivities, driving around the country and managing casual social interactions, going to stores, doing volunteer work, and trying to sell her photographs. The ALJ reasonably found the fact that Gaudette was capable of at least occasional social interaction undermined her testimony as to the severity of her social limitations.

The ALJ next discounted Gaudette's testimony as to her physical limitations

-15-

in part because it was not supported by the objective medical evidence, which the ALJ discussed at length in his decision.  While Gaudette alleged severe malaise, headaches, and fatigue, the ALJ noted that abnormal findings on physical examinations  were rare.  More often than not, Gaudette displayed no abnormalities, and was found to have normal gait, intact reflects, full strength, normal sensation, no evidence of wheezing, and full range of motion of the extremities.

The ALJ also discounted Gaudette's allegations of being unable to use a phone due to chemical sensitivities and the fact that she wears a mask.  The ALJ found Gaudette's allegations were completely inconsistent with evidence showing that she called her treating nurse practitioner at least once a week for many years. The medical records never mentioned that Gaudette had any reaction to using the phone, and her nurse practitioner never said that Gaudette was hard to understand or communicate with over the phone. The ALJ permissibly found this evidence undermined Gaudette's subjective testimony.

These were sufficiently clear and convincing reasons for finding Gaudette's subjective symptom testimony only partially believable.

**C.     Lay Testimony**

Gaudette argues the ALJ did not give germane reasons for rejecting a written statement submitted by her mother, Phyllis Gaudette.

It is well-established in the Ninth Circuit that the "ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 2003); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)). "If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Stout*, 454 F.2d at 1053 (quoting *Dodrill*, 12 F.3d at 919).

Nonetheless, the ALJ need not "discuss every witness's testimony on a individualized, witness-by-witness basis." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th cir. 2012). "Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina* 674 F.3d at 1114. Moreover, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's]claims.'" *Molina v. Astrue*, 674 F.3d at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

The ALJ considered Phyllis Gaudette's statement but gave it little weight in part because she was not medically trained, and because she was a family member and so could not be considered a disinterested witness. The Commissioner concedes that neither of these reasons is a proper basis for discrediting lay witness testimony. But the ALJ also discounted Phyllis Gaudette's statement on the ground that it was not consistent with the record as a whole, which was a germane reason for giving her observations little weight. Even if the ALJ erred by not providing a more detailed explanation, any error was harmless because the ALJ provided sufficiently clear and convincing reasons for discounting Gaudette's subjective testimony, which essentially mirrored her mother's.

## D.   Other Source Evidence

Gaudette argues the ALJ erred by not giving more weight to the opinion of nurse practitioner Dana Hillyer. Hillyer has treated Gaudette for several years, seeing her on a monthly to weekly basis. In December 2012, she wrote a letter in support of Gaudette's disability claim. Hillyer explained that Gaudette's chemical sensitivities had a negative impact on her coping skills, and she could not work because no work environment "is completely free of chemicals, scents, and fragrances." (Doc. 23, at 510). In May 2013, Hillyer completed a Medical Source

Statement of Ability to do Work-Related Activities on which she indicated that Gaudette's impairments caused moderate to marked limitations in all categories. (Doc. 23, at 602).

Unless they are working closely with and under the supervision of a physician, nurse practitioners are defined as "other sources," not acceptable medical sources. Other sources can provide evidence about the severity of a claimant's impairments and how they affect the claimant's ability to work. *See* 20 C.F.R. § 404.1513. Because it does not appear from the record that Hillyer was working closely with or under the supervision of a physician, she is an "other source." While an ALJ must provide specific and legitimate reasons based on substantial evidence to discount evidence from an "acceptable medical source," evidence from an "other source" like Hillyer is not entitled to the same deference and may be discounted if the ALJ provides germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012).

The ALJ considered Hillyer's opinions, but discounted them in part because most of the time she only spoke to Gaudette on the phone and rarely saw her in person, which in turn meant that Hillyer's opinion was based in large part on Gaudette's subjective statements and reports. (Doc. 7-9, at 21). When Hillyer did

see Gaudette in person, her mental status exam findings showed little in the way of objective abnormalities. As the ALJ also pointed out, Hillyer's treatment notes reflected that Gaudette engaged in activities that were not consistent with Hillyer's opinion as to the disabling severity of her chemical sensitivities. For example, Hillyer's notes reflected that Gaudette participated in yoga and karate, interacted with a music band in the desert while on a road trip in California, went to a salon to get her hair cut, did some volunteer work, went to a pet store without a mask, groomed and bathed dog, helped a friend clean her house, did grout work at a friend's house, and went to the store without wearing a mask. (Doc. 7-9, at 19-20). The ALJ thus provided germane reasons for giving Hillyer's opinions limited weight.

## E. Vocational Expert

Gaudette argues the ALJ erred at step five by not resolving various conflicts between the vocational expert's testimony and the information provided in the Dictionary of Occupational Titles.

SSR 00-4p governs the use of vocational expert evidence in disability determinations, and states that "[o]ccupational evidence provided by a VE...generally should be consistent with the occupational information supplied by

the DOT." SSR 00-4p, * 2.  If "there is an apparent unresolved conflict between

VE...evidence and the DOT," the ALJ "must elicit a reasonable explanation for the

conflict before relying on the VE" testimony to support a disability determination.

SSR 00-4p, *2.  An ALJ's failure to ask about a conflict is harmless if the record

shows there is no conflict. *Massachi v. Astrue*, 486 F.3d 1149, 1154 n. 19 (9th Cir.

2007).

Gaudette maintains the ALJ erred by finding she could work as an

inspector, grader and sorter because that job is defined by the DOT as semi-

skilled, and the ALJ limited her to simple routine work.  The Commissioner agrees

that the ALJ mischaracterized the skill level of inspector, grader and sorter job,

which has an SVP of 3, but argues this error was harmless because the rest of the

representative jobs identified by the ALJ have an SVP of 2, which is consistent

with Gaudette's residual functional capacity for simple routine work.

The ALJ found Gaudette was also capable of performing the jobs of

assembler, DOT 734.687-018; production assembler, DOT 706.687-010; inspector

and hand packager, DOT 559.687-074[2]; and hand packer, DOT 920.587-018.

These jobs have an SVP of 2, which is considered unskilled work.  See SSR 00-

---

[2] It appears the ALJ mistakenly identified this job as DOT 559.687-010.

4p, 2000 WL 1898704, *3.  Because all of these jobs have an SVP of 2, they are

consistent with Gaudette's ability to perform simple routine work, and the Court

agrees that the ALJ's error in finding Gaudette could work as an inspector, grader

and sorter was harmless.

Gaudette next claims the ALJ failed to explain how an individual limited to

jobs with an occasional production rate could perform work involving frequent to

continuous handling.  All of the representative jobs identified by the ALJ require

frequent to continuous handling, but the DOT job descriptions do not specifically

address production rate.  The ALJ found when assessing Gaudette's residual

functional capacity that she had "no limitations in the use of arms, hands, or

fingers." (Doc. 7-9, at 13).  There was no apparent conflict between the vocational

expert's testimony and the information in the DOT.

Finally, Gaudette argues the ALJ failed to resolve an apparent conflict

between the vocational expert's testimony that she could work as a hand packager,

and the information provided in the DOT and its companion publication, the

Selected Characteristics of Occupations (SCO).  The ALJ found that Gaudette

cannot tolerate exposure to dust, fumes, odors and gasses, and cannot work with or

be around chemicals or other noxious odors that would affect the claimant's

chemical sensitivities.  (Doc. 7-9, at 13).  The job of hand packager requires frequent exposure to atmospheric conditions. It is reasonable to infer that an individual who cannot tolerate exposure to dust, fumes, odors, gasses, and any noxious odors that might affect her chemical sensitivities could not tolerate frequent exposure to atmospheric conditions.   Thus, there is an apparent conflict between that job requirement the vocational expert's testimony.  The Court agrees the ALJ erred by failing to resolve that apparent conflict.

But the jobs of inspector and hand packager, DOT 559-687-074; production assembler DOT 706.687-010; and assembler 734.687-018 do not involve any exposure to atmospheric conditions.  Because the vocational expert identified three other representative jobs that Gaudette could perform, the ALJ's error was harmless.

## IV.   **Conclusion**

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of prejudicial legal error.  Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

DATED this 28th day of November , 2017

Jeremiah C. Lynch
United States Magistrate Judge

-23-