**FILED**

JUN 0 8 2018

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| VANESSA GAUDETTE, | CV 16–137–M–DLC–JCL |
| Plaintiff, | |
| vs. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

United States Magistrate Judge Jeremiah C. Lynch entered his Findings and

Recommendation on November 28, 2017, recommending that the Social Security

Commissioner's decision be affirmed. Gaudette timely objects and is therefore

entitled to de novo review of the Findings and Recommendation to which she

objects. 28 U.S.C. § 606(b)(1). The portions of the Findings not specifically

objected to will be reviewed for clear error. *United States v. Reyna-Tapia*, 328

F.3d 1114, 1121 (9th Cir. 2003) (en banc); *Thomas v. Arn*, 474 U.S. 140, 149

(1985). For the reasons given below, the Court rejects the Findings and

Recommendation as to the Administrative Law Judge's ("ALJ") determination that

Gaudette did not meet the criteria in Listed Impairment 12.04 and the ALJ's

-1-

credibility finding.   The Court adopts the Findings and Recommendation regarding the ALJ's determination of Listed Impairment 12.02, the lay opinion testimony, the other source evidence, and the vocational expert ("VE") testimony. Ultimately, the Court reverses the Commissioner's decision and remands to the agency for further proceedings.

## BACKGROUND

Because the parties are familiar with the facts and procedural history of this case, they will be included here only as necessary to explain the Court's order.

The saga of Gaudette's application for Social Security disability benefits began in 2008 after Gaudette was fired from her job because she was unable to keep a regular schedule due to her alleged disability.   Gaudette has been diagnosed with multiple chemical sensitivity ("MCS") and associated diseases, hypothyroidism, bipolar disorder, anxiety disorder, personality disorder, undifferentiated somatoform disorder, cognitive disorder, major depressive disorder, sinusitis, and allergic asthma.   (Doc. 7-9 at 11.)   Gaudette's first application alleged an amended onset date of September 1, 2008.   Gaudette was denied initially, on reconsideration, and by an ALJ following an administrative hearing.   After the Appeals Council denied her request for review, Gaudette sought judicial review.   The Court reversed and remanded for a hearing to resolve an error at step three of the evaluation process.   Meanwhile, Gaudette filed a

second application in November 2011. When the Appeals Council remanded the case for a second administrative hearing pursuant to the Court's order, it consolidated Gaudette's two applications. After a second hearing before an ALJ which resulted in a determination that Gaudette was not disabled, Gaudette was again denied review by the Appeals Council, making the ALJ's decision the agency's final decision for the purposes of judicial review. Upon review of the administrative proceedings, Judge Lynch recommended that the Commissioner's decision be affirmed. Gaudette timely objects.

## STANDARD OF REVIEW

This Court applies a deferential standard of review to the Social Security Administration's decision, focusing on procedural rather than substantive issues. The Court must affirm the decision if it is "supported by substantial evidence, and if the Commissioner applied the correct legal standards." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is more than a scintilla, but less than a preponderance." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). This determination requires a review of the "record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* The Court draws inferences in favor of the Commissioner, deferring to the Commissioner's decision "if evidence exists to support more than one rational interpretation." *Batson*, 359 F.3d at 1193.

**DISCUSSION**

Following the five-step sequential evaluation process required under the federal regulations implementing the Social Security Act, the ALJ determined that Gaudette is not disabled.    20 C.F.R. § 404.1520(a).

Gaudette raises the following objections: (1) the ALJ erred in determining that Gaudette did not meet or equal the criteria under Listings 12.02 and 12.04—first, because the ALJ improperly discounted the medical records of Dr. Didriksen in favor of a non-treating, non-examining medical expert, and second, because the ALJ violated the law of the case when it determined that Gaudette did not satisfy any of the paragraph C criteria under 12.04; (2) the ALJ provided legally insufficient reasons for discounting Gaudette's subjective symptom testimony; (3) the ALJ provided legally insufficient reasons for discounting the lay witness testimony; and (4) the ALJ erred in discounting the opinions of nurse practitioner Dana Hillyer.    Judge Lynch's findings on these issues will be reviewed de novo. Because Gaudette did not specifically object to Judge Lynch's finding as applied to the VE, this finding will be reviewed for clear error.

## I.    Listed Impairments

### A. 12.02

Gaudette claims that the ALJ erred at step three of the sequential evaluation process in concluding that Gaudette did not meet or equal in severity the criteria in

–4–

Listing 12.02 (organic mental disorder).

To meet or equal a disability under 12.02, a claimant must satisfy the criteria described in paragraphs A and B or paragraph C.    Gaudette's objection specifically pertains to the ALJ's determination of the 12.02 paragraph B criteria. Paragraph B requires that a claimant's mental impairment result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintain concentration, persistence or pace; (4) repeated episodes of decompensation, each of extended duration.    20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.02.

With respect to the B criteria, the ALJ found that Gaudette had no restrictions in activities of daily living, moderate to marked difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration. (Doc. 7-9 at 12.)    The ALJ based this decision on the expert testimony of clinical psychologist Dr. Margaret Moore, who was called to testify on behalf of the Social Security Commissioner.

Gaudette argues that it was error for the ALJ to adopt the opinion of a non-examining, non-treating physician when the ALJ should have based the decision on the neuropsychological report of Dr. Didriksen, who conducted a thorough evaluation of Gaudette including conducting numerous tests.

-5-

While it is true that the "opinions of treating doctors should be given more weight than the opinions of" non-treating and non-examining doctors, *Reddick*, 157 F.3d at 725, the Court must defer to the Commissioner's decision where "the evidence exists to support more than one rational interpretation." *Batson*, 359 F.3d at 1193.

Despite Gaudette's contentions to the contrary, it is not clear that Dr. Didriksen's opinion clearly differs from the opinion provided by Dr. Moore. First, both Dr. Didriksen and Dr. Moore agree that Gaudette experienced moderate to marked difficulties maintaining social functioning. This opinion was adopted by the ALJ. Additionally, Dr. Moore determined that Gaudette suffers mild difficulties in maintaining concentration, persistence, or pace. Gaudette argues that Dr. Didriksen's report characterized Gaudette's struggles in this area as marked. However, Dr. Didriksen never specifically addressed this issue.

In support of her claim, Gaudette points to Dr. Didriksen's observation that Gaudette "required an inordinate amount of time to complete the evaluation due to the necessity of taking these frequent breaks outside." (Doc. 7-8 at 343.) While this this observation clearly pertains to pace, the comment itself indicates only an impairment on the day of testing and does not provide a general opinion as to its severity in disability nomenclature.

The ALJ adopted the opinion of Dr. Moore, who, in turn, formulated her

opinion after a thorough examination of Dr. Didriksen's findings.    Dr. Moore

attached significance to Dr. Didriksen's finding that Gaudette had an average IQ,

average to high average memory, math, spelling, and reading abilities above the

12th grade level.    Dr. Moore's conclusion also noted that Gaudette is capable of

conducting detailed medical research and keeps an extensive log of her

symptomology.    Based on these results, Dr. Moore concluded that Gaudette

suffered only a mild impairment in this area.

Because it is not clear that the testimony between Dr. Moore and Dr.

Didriksen is conflicting, and because the ALJs decision to adopt Dr. Moore's

opinion on this point is rationally supported by the medical evidence and

testimony, the Court concludes it was not error for the ALJ to have concluded that

Gaudette does not have an impairment that meets or equals the criteria in 12.02.

### B. 12.04

Next, Gaudette claims that the ALJ violated the law of the case doctrine

when the ALJ concluded that Gaudette did not meet the paragraph C criteria for

12.04 (affective disorders).    To satisfy the C criteria a claimant must show:

> [A] [m]edically documented history of a chronic affective disorder
> of at least 2 years' duration that has caused more than a minimal
> limitation of ability to do basic work activities, with symptoms or
> signs currently attenuated by medication or psychosocial support, and
> one of the following:
>     . . .
> 2. A residual disease process that has resulted in such marginal

-7-

adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate.

20 C.F.R. Part 404, Subpart P, Appendix § 12.04.

At Gaudette's first administrative hearing, Dr. Bach testified that Gaudette

met the 12.04 paragraph C2 criterion, when he testified that:

If we look at [her] obsessions and compulsions regarding avoiding an odiferous exposure that would cause the symptomology she describes, then at least in our current level of knowledge put under the heading of multiple chemical sensitivity, I think yes, we do have, I'm looking at C2 now, a residual disease process that has resulted in such marginal adjustment that a change in the environmental would be predicted to cause the individual to be compensated [sic]. Understand what I am saying, if you stick her anyplace other than the relatively safe holding environment she's created for herself, she will likely get exposed to other phenomenally significant events [or] substances and will be compensated [sic.]

(Doc. 7-2 at 99–100.)

The ALJ adopted Dr. Bach's opinion on this criteria, but nonetheless

concluded that Gaudette was not disabled under 12.04.  The Appeals Council

denied review and Gaudette appealed to this Court.  After an examination of the

administrative record, United States District Court Judge Donald W. Molloy

concluded that that the ALJ's decision was legally flawed and remanded for a

determination as to whether Gaudette met the criteria required by the prerequisite

clause: a "[m]edically documented history of a chronic affective disorder of at least

2 years' duration that has caused more than a minimal limitation of ability to do

-8-

any basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support."    20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04.

At Gaudette's second administrative hearing, Dr. Moore testified that she did not believe that Gaudette met any of the paragraph C criteria and it was her opinion that Gaudette's symptoms best fit within the criteria under 12.07 and 12.08.    (Doc. 7-9 at 88–89.)    The ALJ prompted Dr. Moore to be more specific and asked for a "full discussion of the part C criteria" as it pertained to 12.04. (*Id.*)    However, instead of addressing the prerequisite clause, Dr. Moore proceeded immediately to a discussion of why the listed criteria under clusters C1, C2, and C3 did not, in her opinion, apply to Gaudette's case.    (*Id.* at 89–91.)    Dr. Moore failed to address the prerequisite clause and the ALJ failed to make a finding on this point.    For the second time, the record is silent on this issue.

In the context of social security, the law of the case prohibits a court "from considering an issue that has already been decided by that same court or a higher court in the same case."    *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). However, the doctrine "should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust."    *Id.*

Judge Lynch recommended to affirm the decision of the Commissioner,

finding that the law of the case was not violated because Dr. Moore had the benefit of "new medical evidence and the medical expert testified based on her review of the record as [a] whole." (Doc. 28 at 11.) As Gaudette correctly points out, it is not enough that the evidence be merely new. To avoid violating the law of the case doctrine, the new evidence must also be "substantially different." (Doc. 29 at 2 (citing *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991).)

The Ninth Circuit has considered new testimony "substantially different" when it leads to a different outcome on the same issue. In *Stacy*, a VE testified that the claimant could not perform his previous work as a stationary engineer because the claimant's plethora of symptoms rendered him unable to undertake the heavy lifting requirements of his former job. *Stacy*, 825 F.3d at 566. At a subsequent hearing, the ALJ was "surprised" to learn that the claimant's previous employment was largely supervisory. *Id.* at 567. Contrary to its previous conclusion, the new information caused the VE to conclude the claimant could continue to perform the portion of his job that was supervisory. *Id.* The Ninth Circuit held that the law of the case was not violated. *Id.*

Lower courts in the Ninth Circuit have found new evidence "substantially different" when the new evidence is extensive or is directly related to a medically determinable impairment where the previous record lacked detail. *See Celedon v. Berryhill*, 2017 WL 3284519, at *5 (E.D. Cal. Aug. 2, 2017) (deciding that the law

of the case doctrine did not apply because the ALJ considered over 2,000 additional pages of medical records at the remand hearing); *see Meza v. Comm'r Soc. Sec. Admin.*, 2017 WL 916446, at *5 (D. Or. Mar. 8, 2017) (declining to apply the law of the case doctrine upon finding the new medical evidence was "directly related" to a medically determinable impairment).

Gaudette argues that the evidence admitted on remand relevant to the paragraph C criteria was identical to the prior evidence. Specifically, Gaudette notes that Dr. Bach believed that Gaudette satisfied the paragraph C criteria because of her obsession with avoiding an odiferous exposure. The "new evidence" available to Dr. Moore indicated that Gaudette continued to suffer from an obsessive fear of chemicals in her environment. For example, Gaudette testified that her trips into public are very limited. Gaudette explained that when she encounters an exposure, she is forced to abandon her trip and engage in a cleansing ritual where she strips off the outer layers of her clothing and washes her hair with soap and water in the parking lot of whatever location she has fled. Gaudette testified that this happens approximately 80 to 85% of the time she goes into public. (Doc. 29 at 2–3.)

The Court agrees that the subjective symptoms described by Gaudette at the second hearing are consistent with evidence taken at the first hearing. The broader medical evidence is substantially similar as well.

-11-

The evidence reviewed by Dr. Bach at the first hearing consisted of extensive treatment notes from Dr. Neal Rogers who treated Gaudette for allergic asthma and chemical sensitivity; the treatment notes of Dr. Jeff Roush who also treated Gaudette for chemical sensitivity, and the treatment records of Gaudette's dermatologist, naturopathic and acupuncturist, to name a few. Additionally, Dr. Bach had access to the extensive notes of nurse practitioner Hillyer, who Gaudette consulted with on the phone and in person on a weekly basis. The medical records relied on by Dr. Bach began in approximately 2003 and ran through 2010. (Doc. 7-2 at 34–36.)

At the second administrative hearing, Dr. Moore reviewed all of these same records in formulating her opinions. Additionally, Dr. Moore had approximately 150 pages of new medical records representing the period of time between the 2010 and the 2015 hearing. These new records consisted of additional treatment notes from nurse practitioner Hillyer, Dr. Neal Rogers, and Gaudette's other medical care providers. These new records document the same symptoms and contain similar treatment strategies. The only arguably "different" medical evidence at the second hearing was Dr. Didriksen's neuropsychological evaluation, which is largely sympathetic to Gaudette's application. While this report may lend some diagnostic credibility to Gaudette, in no way does it render the evidence "substantially different." (Doc. 7-9 at 31–35.)

Because the medical evidence itself was substantially similar, the true difference between the hearings lies not in the factual development of Gaudette's case, but in the expert conclusions draw from it. While Dr. Bach was of the opinion that Gaudette's symptoms best fit within Listings 12.02, 12.04, and 12.06, Dr. Moore believed that Gaudette's symptoms best fit within Listings 12.07 and 12.08. These are the precise circumstances that the law of the case seeks to avoid.

Because the Court does not construe this "new evidence" as substantially different, the law of the case was violated when the ALJ adopted Dr. Moore's opinion that Gaudette did not satisfy the 12.04 Paragraph C2 criteria. Because there is still no finding in the record as to whether Gaudette satisfies the prerequisite clause, the Court remands for a hearing to determine whether Gaudette has demonstrated a "medically documented history of a chronic affective disorder of at least 2 years' duration that has cause more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support."

## II. Subjective Symptom Testimony

Judge Lynch found that the ALJ did not err in determining Gaudette's subjective testimony was only partially credible. Gaudette objects, arguing that the ALJ provided legally insufficient reasons for discounting her subjective

symptom testimony.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce" the symptoms. *Id.* (citation and internal quotation marks omitted). If the claimant meets her burden, the ALJ must then offer "specific, clear and convincing reasons" before rejecting her testimony unless there is evidence of malingering. *Id.* The ALJ must "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick*, 157 F.3d at 722. In credibility determinations, the ALJ's role is not to evaluate the general reliability of the claimant, but to determine whether it is appropriate to reject specific allegations. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

The ALJ determined that Gaudette met her initial burden of "present[ing] objective medical evidence . . . of underlying impairments which could reasonably be expected to produce" her alleged symptoms of muscle and joint pain, fatigue, headaches, sensitivities to odors and chemicals, sinusitis, allergic asthma, anxiety disorder, cognitive problems, and bipolar disorder. (Doc. 7-9 at 13.) The ALJ also determined that there was no evidence of malingering. (Doc. 28 at 14.)

However, at the second step, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." (Doc 7-9 at 15.)

The ALJ discounted Gaudette's testimony for the following reasons: (1) her allergy test results did not indicate an increase in antibodies which undermined her claim that she suffers from environmental sensitivities; (2) her "spotty" treatment record is not consistent with someone suffering from persistent symptoms; (3) her exam results are largely normal; (4) her "generally positive" outlook on life is inconsistent with someone suffering from debilitating mental symptoms; (5) the results of her neuropsychological evaluation do not support her claim of concentration difficulties; (6) the records of nurse practitioner Hillyer indicate that she is "actually fairly social" despite her claim of isolation; and (7) her daily activities are not as restrictive as she indicates based upon her ability to engage in some hobbies and travel. (Doc. 7-9 at 13–21.) In essence, the ALJ's stated reasons boil down to a determination that Gaudette's symptoms are not credible because the objective medical evidence does not support the conclusion that there is anything wrong with her. This reasoning is legal error. *Reddick*, 157 F.3d at 722 (stating that "[o]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical

-15-

evidence." (citing to *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc)). Rather, to reject a claimant's testimony, the ALJ may rely on a claimant's "reputation for truthfulness, inconsistencies either in [her] testimony or between [her] testimony and [her] conduct, [her] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [she] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The Court cannot agree that the reasons given by the ALJ are sufficiently clear and convincing to reject Gaudette's testimony. The ALJ's reasons demonstrate a selective reading of the record, fail to distinguish between symptoms that are reactive rather than chronic, and misunderstand the nature of MCS—an "idiosyncratic" illness which is "elusive" and "mysterious" but nonetheless a "known diagnosis." *See Tietelbaum v. Astrue*, 2011 WL 5293278, at 1 (C.D. Cal. Nov. 3, 2011) (discussing MCS and citing to a series of cases that recognize it as legitimate: *Wall v. Astrue*, 2010 WL 2757514 (C.D. Cal. 2010); *Owen v. Astrue*, 2011 WL 588048 (N.D. Tex. 2011); and *Brandenburg v. Astrue*, 2010 WL 2621254 (S.D. Oh. 2010)).[1]

---

[1] For a discussion of the history of MCS, the "syndrome of symptoms," including an account of its identification by the Social Security Administration as a recognized medical condition, *see* Ruby Afram, *New Diagnoses and the ADA: A Case Study of Fibromyalgia and Multiple Chemical Sensitivity*, 4 YALE J. HEALTH

As noted by the ALJ, any disagreement over the validity of Gaudette's diagnosis of MCS—or even the validity of MCS itself—is not required for a disability determination. (Doc. 7-9 at 15.) The question here is limited to whether the ALJ provided "specific, cogent reasons" to discount Gaudette's testimony. *Reddick*, 157 F.3d at 722.

Gaudette argues that the ALJ erred by characterizing Dr. Schumpert's allergy testing as proof that Gaudette's chemical sensitivities are exaggerated. Dr. Schumpert's test results did not show any increase in antibodies when Gaudette was exposed to common environmental toxins. Gaudette points out that this result is unsurprising because MCS is not an allergic reaction.

The ALJ discounted the medical findings of Dr. Rae, one of the nation's top clinicians in MCS, who diagnosed Gaudette with reactive airway disease, autonomic nervous system dysfunction, immune deregulation, allergic rhinosinusitis, and chemical sensitivity, because the medical records only indicated that Gaudette has symptoms "similar to others believed to have MCS," which established only correlation, not causation between Gaudette's environmental exposure and symptomology. (Doc. 7-9 at 16.) To the extent to which the ALJ required objective medical evidence to show direct causation between

---

POL'Y, L. & ETHICS 85, 98–105 (2004).

environmental factors and Gaudette's symptoms, this is not the standard required by the Ninth Circuit when making a credibility assessment. *Bunnell*, 967 F.2d at 343.

The ALJ determined that Gaudette met her burden of showing that she suffered from MCS which could reasonably be expected to cause the symptoms of which she complains. The ALJ determined—by looking to Dr. Rae's records—that Gaudette's symptoms correlate with MCS. (Doc. 7-9 at 16.) Contrary to the ALJ's assessment, Dr. Schumpert's results do not indicate that Gaudette does not suffer symptomatic reactions when exposed to environmental toxins, only that her antibodies are not elevated in response. For this reason, the ALJ's determination that Dr. Schumpert's test results conflict and therefore call into question Gaudette's credibility on this issue is not supported by substantial evidence and is legally flawed.

Similarly, the ALJ erred in determining that Gaudette's sporadic medical treatment indicates that her symptoms are not as severe as she claims. As noted by the ALJ, Gaudette was sometimes prevented from seeking treatment due to financial considerations and fear of chemical exposure at various facilities. (*Id.* at 17.) The ALJ also noted Gaudette's considerable treatment history ranged from acupuncture to oxygen therapy, and everything in between. (*Id.* at 16–17.) For the reasons recognized by the ALJ, any interpretation that Gaudette's "spotty"

record of seeking treatment undermines the severity of her symptoms is not

persuasive and will be disregarded. *See Carmickle v. Comm'r of Soc. Sec. Admin,*

533 F.3d 1155, 1162 (9th Cir. 2008) (concluding that where a claimant had a good

reason to not to engage in aggressive treatment, this fact was not a proper basis for

refuting the claimant's credibility.)

This same reasoning applies to the ALJ's conclusion that Gaudette's often-

normal exam results do not support the severity of her symptoms.    Gaudette

testified that she frequently forgoes medical treatment when she is experiencing a

reaction because going to a medical facility often exacerbates her symptoms.    As

the record indicates, Gaudette's primary form of treatment is to remove herself

from the cause, rest, and wait for her reaction to subside.

The ALJ's determination is again based on the assumption that judgment

that a lack of objective medical evidence can be used to undermine a claimant's

credibility.    Because this is the incorrect legal standard, the ALJ's determination

was in error.    *Bunnell,* 967 F.2d at 343.

Gaudette next objects to the ALJ's determination that Gaudette's daily

activities are inconsistent with her allegation of disabling symptoms.    The ALJ

pointed out that while Gaudette claimed that her chemical sensitivities were so

severe that she was often unable to seek treatment at medical facilities, she had

driven thousands of miles and spent many nights in her car without experiencing

-19-

negative reactions.   The ALJ also noted that Gaudette was occasionally unbothered by her symptoms—particularly when something was of interest to her—and noted that she enjoyed reading and photography.   (Doc. 7-9 at 19–21.) Indeed, everything noted by the ALJ is present in the record.   Gaudette has never claimed her symptoms are unrelenting, and the Ninth Circuit rejects the argument that a claimant is able to work because she attempts to improve her situation by engaging in normal activities and seeking treatment—which was the purpose of the road trip noted by the ALJ.   "Disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."   *Reddick*, 157 F.3d at 722 (citing to *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) and quoting, "a disability claimant need not vegetate in a dark room in order to be deemed eligible for benefits" (internal quotation marks omitted).)

The ALJ's decision fails to account for the important difference, both in kind and degree, between a few activities done over the course of several symptom-free days in a week and "the more grueling environment of the workplace, where it might be impossible to periodically rest."   *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1987).   The Court concludes that the ALJ's credibility determination was therefore in error.

For the reasons already explained, the Court concludes that the ALJ failed to provide legitimate, cogent reasons supported by substantial evidence to reject

Gaudette's subjective symptom testimony. On remand, the ALJ must incorporate Gaudette's testimony into the disability determination.

### III. Lay Opinion Testimony

The ALJ rejected the lay witness testimony of Gaudette's mother, Phyllis Gaudette. Judge Lynch recommended to affirm. Gaudette argues that the ALJ's stated reasons for discounting this testimony are insufficient and provides three reasons, only one of which need be discussed. Gaudette argues that it was improper for the ALJ to discount the testimony of Phyllis Gaudette based on her past financial support of her daughter. This argument misses the mark.

In order to disregard lay witness testimony, the ALJ must provide a reason germane to the witness. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The germane reason provided by the ALJ in discounting this testimony does not hinge on any previous financial support. Rather, as a continued financial supporter of Gaudette, the ALJ determined that Phyllis Gaudette has a continued financial interest in the outcome of Gaudette's application, and therefore her testimony was not credible. Whether this is a compelling reason to discount this testimony is not for this Court to decide. Because the ALJ provided a reason germane to Phyllis Gaudette, the Court will defer to the ALJ's credibility finding.

### IV. Other Source Evidence

Judge Lynch found that the ALJ provided a germane reason to give low

weight to the opinion of nurse practitioner Hillyer. (Doc. 28 at 18–20.) Gaudette

argues that the ALJ's conclusion reflects a selective reading of Hillyer's records

and misunderstands the nature of MCS. (Doc. 29 at 9.)

Nurse practitioners are defined as "other sources" rather than an "acceptable

medical source." 20 C.F.R. § 404.1513. Other sources can provide evidence

about the severity of a claimant's impairments and how they affect the claimant's

ability to work, but their opinion is not entitled to the deference given to an

"acceptable medical source." *Id.* To disregard other source testimony, the ALJ

need only provide an opinion germane to that witness. *Molina v. Astrue*, 674

F.3d 1104, 1111–12 (9th Cir. 2012).

The germane reason provided by the ALJ for discounting nurse practitioner

Hillyer's opinion was because she rarely saw Gaudette in person and most often

spoke to Gaudette on the phone. The ALJ determined that for this reason, nurse

practitioner Hillyer's opinions were largely based on Gaudette's own assessment

of her condition. (Doc. 7-9 at 21.) Failure to provide a unique basis for an

opinion is a germane reason to discount the testimony as duplicative.

Accordingly, the Court affirms the ALJ's decision to give low weight to nurse

practitioner Hillyer's opinion.

## V. Vocational Expert

Judge Lynch noted that the ALJ erred at step five by not resolving conflicts

between the VE's testimony and the information in the Dictionary of Occupational Titles, but recommended that the ALJ's decision was harmless because the VE identified three other representative jobs that Gaudette could perform.   Gaudette does not object, therefore the Court reviews for clear error.   Finding none, the Court adopts Judge Lynch's recommendation that this error was harmless.

## VI.   Disposition

Courts reviewing Social Security proceedings "have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."   402 U.S.C. § 405.

Under the "credit-as-true rule," medical opinions and claimant testimony are understood as true "where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the [opinion or testimony] were credited."   *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (citation and internal quotation marks omitted).   The Ninth Circuit has developed a three-part test for district courts to apply in determining whether to remand for further fact-finding or to remand for calculation and award of benefits. The district court must remand to the ALJ with instructions to calculate and award benefits if: "(1) the record has been fully developed and further administrative

proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disable on remand." *Id.* at 1020. When all three prongs are satisfied, the district court abuses its discretion by failing to remand for an award of benefits. *Id.*

Here, the Court must remand for further proceedings because the first prong of the credit-as-true test is not met. The record is insufficiently developed as to whether Gaudette meets the prerequisite clause of Listing 12.04, paragraph C. Should the ALJ conclude that Gaudette is not disabled under Listing 12.04 and reach step four of the sequential process, the record is also insufficiently developed as to impact and severity that Gaudette's symptoms have on her ability to work. On remand, the ALJ will have the opportunity to further develop the record in this light. Because the Court determines that "there are outstanding issues requir[ing] resolution," it does not reach the second and third prongs of the test. *Treichler v. Comm'r of Soc. Sec. Admin*, 775 F.3d 1090, 1105 (9th Cr. 2014).

In summary, on remand, the ALJ must: (1) determine whether Gaudette has a "medically documented history of a chronic affective disorder of at least 2 years' duration that has cause more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or

psychosocial support;" and (2) appropriately credit Gaudette's testimony regarding her symptoms.    Accordingly,

IT IS ORDERED that Judge Lynch's Findings and Recommendation (Doc. 28) are ADOPTED in part and REJECTED in part.    The Commissioner's decision is REVERSED, and Gaudette's application for Social Security benefits is REMANDED to the agency for further proceedings consistent with this Order.

DATED this 8th day of June, 2018.

Dana L. Christensen, Chief Judge
United States District Court